**WAGON WHEEL VILLAGE, INC., a Wyoming corporation, Appellant (Plaintiff),**

v.

**Todd HARRIS, Appellee (Defendant).**

No. 99–117.

Supreme Court of Wyoming.

Dec. 29, 1999.

Representing Appellant: R. Michael Mullikin of Mullikin, Larson & Swift, LLC, Jackson, WY.

Representing Appellee: David G. Lewis, Jackson, WY.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

Wagon Wheel Village, Inc. (Wagon Wheel), a motel/resort complex in Jackson, appeals from an award of $4,000 on a counter-claim by its lessee, Todd Harris, in a breach of lease action. Wagon Wheel also appeals the trial court's decision denying it an award of attorney fees as the "prevailing party" under the terms of the lease.

We reverse, vacating in part and remanding in part.

### ISSUES

Wagon Wheel presents five issues on appeal:

I. Whether Wagon Wheel was excused from its obligations under the lease from and after the default of Harris.

II. Whether, assuming Wagon Wheel breached its lease, the acts described by the trial court on which such breach was predicated proximately caused the damages awarded.

III. Whether the damages awarded were speculative and without proper factual foundation.

IV. Whether Harris failed to mitigate his damages.

V. Whether the trial court properly refused to award a reasonable attorney fees [sic] to Wagon Wheel pursuant to the terms of the lease.

Harris provides a more succinct statement of the issues before the Court:

A. Whether the appellee [Harris] was entitled to his damages as a result of the breach of the agreement by the landlord [Wagon Wheel].

B. Whether the appellant [Wagon Wheel] was entitled to recover its attorneys fees and costs where it was found by the trial

court to be in default under the agreement, and in causing damage to the appellee's leasehold property.

## FACTS

This extremely contentious case began when Harris purchased a laundromat business in late 1996. As part of the purchase of the business, Harris received a two-year lease on a building that was owned by Wagon Wheel and was a part of its motel/resort complex. Harris took over the business effective January 1, 1997.

Harris' relationship with his landlord was initially amicable. However, when the owner died in the summer of 1997, her son took over Wagon Wheel, and the relationship with Harris deteriorated rapidly. Wagon Wheel began to engage in several petty harassments of Harris' business, such as refusing to remove snow from the roof of his building or from his portion of the parking lot, and failing to supply Christmas lights for the building while doing so for all other occupied businesses on the premises. Wagon Wheel also ordered other businesses not to provide services such as making change for laundromat customers. In addition, Wagon Wheel assigned parking spots which had historically been used by the laundromat to another business. Then, sometime in late February or early March 1998, Wagon Wheel upped the ante by plowing snow from the parking lots into a large pile directly in front of Harris' building. The pile of snow subsequently melted and, because of the nature of the terrain and the location of the pile, flooded the laundromat.

Meanwhile, Harris had failed to obtain fire and extended all-risk insurance coverage on the leased premises pursuant to lease requirements. Upon discovery of this fact, Wagon Wheel found the breach it was looking for and filed this action on December 10, 1997, to evict Harris. Harris counterclaimed for damages and/or an abatement of the rent based on the contention that Wagon Wheel's actions regarding the snow removal and parking space appropriation breached the lease. After a bench trial, the district court held that Harris' failure to carry the requisite insurance constituted a breach of the lease. Consequently, the district court ordered Harris to vacate the premises. This decision is not at issue on appeal.

In addition, the district court concluded that Wagon Wheel had also breached the lease when it caused the snow to be piled in a manner that led to the flooding of the laundromat resulting in damages of "approximately" $4,000. The court ordered Wagon Wheel to pay $4,000 to Harris and also denied Wagon Wheel's motion for attorney fees under the provision of the lease wherein the "prevailing party" was entitled to such when it ordered each party to bear its own costs and attorney fees. Wagon Wheel now appeals that part of the judgment awarding damages to Harris and denying an award of attorney fees.

## DISCUSSION

*Damages*

■ Wagon Wheel raises several issues in its attempt to reverse the district court's award of damages to Harris on his counterclaim. We need, however, consider only one: whether the amount of damages awarded is supported by sufficient evidence. Our review of the entire record leads us to answer that question in the negative.

■ "On review, this court assumes that the evidence in favor of the successful party is true," and we give that evidence "every favorable inference that may be reasonably and fairly drawn from it." *Dunn v. Rescon Technology Corp.*, 884 P.2d 965, 967 (Wyo. 1994). We give no consideration whatsoever to the evidence presented by the unsuccessful party which is in conflict with the evidence of the successful party. *Id.* As in any other breach of contract action, it almost goes without saying that it was incumbent upon Harris to introduce sufficient evidence in support of his claim for damages. *See, e.g., Examination Management Services v. Kirschbaum,* 927 P.2d 686, 699 (Wyo.1996); *Sagebrush Development, Inc. v. Moehrke,* 604 P.2d 198, 201–204 (Wyo.1979).

Unfortunately, the district court's order fails to identify how the $4,000 damage figure was derived. We have searched the record

in vain for any evidence which directly or through inference could even remotely support the award of $4,000 on Harris' counter-claim. There was no testimony from Harris or any other witness regarding the extent of damages suffered by Harris' business due to the actions of Wagon Wheel. The only evidence remotely related to the issue of damages is two pocket calendars wherein Harris ostensibly recorded the daily gross receipts of the laundromat. This evidence, however, is insufficient to support the district court's determination for two reasons.

First, the two calendars were introduced into evidence by Harris for the limited purpose of showing loss of profit for the period of June, July, and August 1998 due to Wagon Wheel's appropriation of the laundromat's historic parking places. Harris specifically declaimed any intent to utilize the calendars to show a loss of profit for any other period of time including, presumably, the period of February and March 1998 when the flooding occurred.[1]

Even were we to ignore the limitations placed on the admissibility of the calendars, the contents do not support the district court's damage award. The calendars' "record" of gross receipts is not complete and is not in an organized form. Hence, it is impossible to determine from the calendars how, or whether, the district court derived its calculation of damages. Furthermore, while a proper measure of damages for the breach of a lease may be *net profits*, the only information in the record is the *gross revenues* of the laundromat listed in the calendars. There is no evidence at all in the record of Harris' expenses, making it impossible to calculate a proper award of damages based on lost profits.

Under the circumstances of this case, there is a complete lack of proof on an essential element of Harris' counter-claim: the amount of damages suffered as a result of Wagon Wheel's breach. We have no recourse but to vacate the award of $4,000

damages on the grounds that there is insufficient evidence in the record in support thereof.

### Attorney Fees

■ In Wyoming, each party to a lawsuit bears their own attorney fees in the absence of an express contractual or statutory provision for attorney fees. *McLain v. Anderson*, 933 P.2d 468, 472 (Wyo.1997). The lease at issue in this matter provided:

> In the event either party shall find it necessary to obtain the services of an attorney to enforce any of the covenants and conditions of this Lease, the prevailing party shall be entitled to reimbursement for all costs and expenses, including reasonable attorneys' fees, whether or not litigation is commenced.

Despite this provision, the district court ordered each party to bear its own costs and attorney fees. Although the order is silent as to why the district court made that decision, it is likely based on the determination below that both parties had breached the lease and, hence, neither was a "prevailing party." In light of our decision reversing and vacating the district court's order of damages to Harris, we reverse and remand this portion of the decision for a determination of whether attorney fees are now warranted.

### CONCLUSION

We must reverse and vacate the award of damages to Harris on his counter-claim because there is insufficient evidence in the record to support it. We wish to make clear that this decision in no way condones the actions of Wagon Wheel in this matter. Similarly, we must reverse the decision ordering both parties to bear their own costs and attorney fees and remand the matter to the district court for further consideration.

---

1. The reason for the voluntary limitation on the calendar's admissibility was related to the timing of their offerance as evidence. The existence of the calendars was disclosed to Wagon Wheel and the court after the deadline imposed by the court's pretrial order for disclosing trial exhibits

had expired. Since the period relating to the loss of profits due to the appropriation of the parking spots was ongoing at the time of the pretrial conference, the trial court concluded that the calendars should be admitted.

327

Reversed, vacated in part and remanded in part.